## THE PEJEPSCOT.

### THE BARBARA RUXTON.

#### No. A–15587.

District Court, E. D. New York.

Dec. 3, 1940.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan and Charles F. Welch, both of New York City, of counsel), for claimant.

GALSTON, District Judge.

On January 19, 1939, the tug Pejepscot took in tow the light barge American Tar, at Elizabethport, bound for Gowanus Canal. The barge was on the tug's port side and extended beyond the tug about eighty feet. The tide was ebb and the tug was proceeding at the rate of about seven miles per hour over the ground. At some point between Port Richmond and West Brighton, Staten Island, Hansen, the man at the wheel, observed the Ruxton off the docks of the Frank McWilliams, Inc. Hansen estimated the distance between the vessels at about one mile, but it was probably less, if his markings on the chart are to be considered as a better guess.

The Ruxton had left the McWilliams docks loaded with 38,000 gallons of oil, bound for Inwood, Long Island. Having a draft of six feet three inches at the bow, and but six feet at the stern, she was a trifle lower at the bow. Duncan, the captain, who was at the wheel, was navigating the Ruxton for the first time.

It is agreed that as the vessels were proceeding in the same direction, there were no other craft to obstruct their navigation.

The Pejepscot was overtaking the Ruxton, for the latter's speed was between 3 miles and 4½ miles per hour. The vessels collided at a point about 1000 yards east of the position of the Ruxton when she was first sighted by the Pejepscot.

On the one hand the Pejepscot ascribes the collision to the fault of the Ruxton in taking a sudden sheer to her port. The Pejepscot was struck at about amidships, i.e., 56 feet aft of her bow by the port bow of the Ruxton and at an angle of about forty-five degrees. Hansen testified that as he was overtaking the Ruxton they were on parallel courses and that he was about 100 feet off the port side of the Ruxton.

Duncan, however, testified that as the Pejepscot came up, only fifteen feet separated the vessels, and he ascribes the sheer of the Ruxton to the ensuing suction.

Hansen unquestionably overestimated the distance between the parallel courses—for if he held to his course while the Ruxton took the sheer, it would have been necessary for the stern of the Ruxton to have bridged the distance of upwards of 100 feet while the Pejepscot was covering a lesser distance, though travelling at a greater speed than the Ruxton. It is much more within the realms of probability to believe that the two vessels were much closer together than Hansen estimated, though not so near to each other as Duncan asserted.

It appears that the Ruxton was difficult to steer and that, taken in consideration with the circumstance that it was Duncan's first assignment on the boat, plus the fact that there was some evidence of his having imbibed liquor, may readily account for the sudden port sheer. However, it is reasonable to infer that the Pejepscot was not without fault. In the first place, she sounded no passing signal; of itself that might not be of moment, for it is not certain that her failure to do so contributed to the collision. It seems probable that the approach of the Pejepscot was known to those on the Ruxton, including Duncan at the wheel, but it is not at all likely that the Ruxton expected to be passed so closely.

I conclude that there was mutual fault, on the part of the Pejepscot in passing too closely at a time when there was no possible need for so doing, and on the part of the Ruxton for taking an unnecessary sheer,

owing either to improper seamanship or an imperfect steering design of the vessel, or both. The libellant may have a decree for half damages.

Submit findings of fact and conclusions of law in conformity with the foregoing opinion.